JOHNS and others, appellants, and NORRIS and others, respondents.

1. A scheme was entered into by the widow and the administrator of decedent, to procure a foreclosure sale of the intestate's lands, at which the administrator was to buy them in at an inadequate price, by giving out at the sale that he was purchasing for the widow, and thus dissuade others from bidding. Under these circumstances, the administrator purchased the lands at the sheriff's sale, and agreed to convey them to the widow for the price at which they were struck off to him. On his refusal, subsequently, to do so, the widow and the intestate's only child filed a bill to redeem. *Held*, that the widow, having participated in the fraud, was not entitled to relief, but that as to the child, the administrator would be regarded as a trustee, holding the property for her benefit.

2. Actual possession by the *cestui que trust* is constructive notice to a purchaser that there is some claim, title, or possession of the property adverse to his vendor, and this is sufficient to put him upon his inquiry.

Appeal from a decree of the Court of Chancery. The opinion of the Chancellor is reported in 7 *C. E. Green* 103.

*Mr. James B. Vredenburgh*, for appellants.

*Mr. Ransom*, for respondents.

The opinion of the court was delivered by
VAN SYCKEL, J.

Thomas W. Morehouse died September 27th, 1855, intestate, seized in fee of three parcels of land in Jersey City, known as the York street, Greene street, and Grove street

lots, each covered by a mortgage. Ann Maria Morehouse and his only child, Theresa, survived him. Administration of his personal estate was granted to his widow, and, subsequently, the letters to her were revoked, and administration *de bonis non* granted to Noah Norris, February 17th, 1857. After this, the mortgages were foreclosed and the real estate of the decedent sold at foreclosure sales by the sheriff. Noah Norris purchased the Greene street property November 19th, 1857, for $1325, and the Grove street property January 7th, 1858, for $2550. The total surplus arising from these sales, above the mortgages, was $65.98, which Noah Norris received, as administrator, and with this and the proceeds of sale of the personalty, paid the creditors of the intestate a dividend of twelve per cent., leaving the residue of their claims unsatisfied. In May, 1867, Ann Maria Morehouse and Theresa, with Hiram C. Johns, her husband, filed their bill in chancery, charging that these foreclosure sales were procured by the contrivance of Noah Norris, who advised the widow not to pay the interest on the mortgages, so that they would be foreclosed, and that he promised her that at the foreclosure sales he would buy in the properties at a low price, by making it known that he was bidding for her benefit, and that he would advance the money and take the titles, and permit her, afterwards, to redeem by paying him the amount of his bid and interest. That in pursuance of this arrangement, Noah Norris dissuaded others from bidding at the sheriff's sales, and secured the lots on Greene street and Grove street at prices much below their actual value. The bill prays for a conveyance of these lots to the complainants upon payment, by them, of the amount bid by Noah Norris, with interest. The evidence in the cause satisfactorily establishes the truth of these allegations in the bill, and that Noah Norris, by giving out, at the sheriff's sale, that he would buy the lots for the benefit of the widow, acquired title to them for an inadequate price. This scheme was manifestly in fraud both of the creditors of the estate of Thomas W. Morehouse, and of the rights of his infant daughter. If consummated, its

effect was to deprive her of her inheritance, and vest the whole estate in her mother. The widow, having participated in the fraud, is not entitled to relief, but the infant, who, at the time of the sheriff's sale, was only thirteen years old, occupies a different position, and as to her, the administrator will be regarded as a trustee, holding the property for her benefit. A contract of this character cannot be enforced, either at law or in equity. It was conceived in fraud, so that neither party to it can be permitted to derive any advantage from it; its fruits must be applied to the benefit of the innocent party, whose substantial rights have been injuriously affected by it. It does not involve the consideration of the statute of frauds : it rests upon the simple rule that one who has fraudulently deprived another of his rights, shall be compelled to make restitution. On the 17th of February, 1865, Noah Norris conveyed the Greene street property to his brother, John D. Norris, and on the 13th of April, 1858, the Grove street property to his son, Brainard T. Norris, who are made defendants to the bill of complaint. If John D. and Brainard can be charged with notice, actual or constructive, of the fraud of their grantor, they took their title subject to the execution of the trust with which it was burdened in the hands of Noah Norris. John D. Norris denies that he knew anything of the unlawful arrangement between Noah and the widow, but the evidence shows that the consideration he paid for the Greene street lot was much less than its value, and that he was present at the sheriff's sale, where it was made known, as a number of witnesses testify, that Noah Norris had agreed to buy the property in for Mrs. Morehouse, as an inducement to bidders to refrain from buying. It is highly improbable that this information was not communicated, at that time, to John D. Norris. But, if actual notice is not conclusively established, it is admitted that Noah Norris permitted the widow to occupy the Greene street property, after the sale, without rent, and that at the time of the conveyance to John, she was still in possession. Actual possession by the *cestui que trust* is constructive

notice to a purchaser that there is some claim, title, or pos-
session of the property adverse to his vendor. This rule
was recognized by Lord Eldon, in *Daniels* v. *Davison*, 16
*Vesey* 249, and since that time it has become so firmly estab-
lished that it is necessary only to refer to a few authorities
on the subject. *Perry on Trusts*, § 223 ; *Le Neve* v. *Le Neve,*
2 *L. C. in Eq.* \*23; *McDavit* v. *Pierrepont*, 8 *C. E. Green*
42. This fact should have put John upon his inquiry, and
if he had inquired, he would have ascertained the equitable
claim which Mrs. Johns set up to the estate. By the con-
veyance, therefore, to John D. Norris, the Greene street prop-
erty is not discharged from the trust.

The Grove street lot did not remain in the possession of
Mrs. Morehouse, and therefore, as to that lot, Brainard must
be charged with actual notice of the vicious undertaking, or
with such information as should have put him upon inquiry
which would have led to its discovery. He asserts that he
had no knowledge of it, but the circumstances of the case, and
his own testimony, persuade me that he is mistaken. He
purchased the property for an inadequate price, in part pay-
ment of a claim which he had against his father, and his state-
ment on the witness stand that he allowed $3500 for it, when
it appears by the bill and answer, and also by his deed, that
the consideration was $2500, does not add to the credibility of
his testimony, so far as it is in his own favor. He admits
that in 1861, and again in 1863, prior to his purchase, his
father told him that Mrs. Morehouse wished to redeem, and
requested him to prepare a statement showing the amount to
be paid by her on redeeming this property. These estimates
were made by Brainard, charging the widow with the price
at which the lot was struck off to Noah at sheriff's sale, and
containing items which could not have been ascertained from
mere memory. They show conclusively that such an account
must have been kept by Noah as would have been kept by a
person charged with a duty or obligation to convey to Mrs.
Morehouse. These accounts were unquestionably in the
hands of Brainard when he made up the statements. This

fact, together with the circumstance that his father requested him to make up the account, not only in 1861, but again after the lapse of two years, if not evidence of actual notice of the trust, was at least sufficient to put him upon his inquiry before he took the title. He does not, therefore, occupy the position of a *bona fide* purchaser for value without notice. The result is that, as to the Greene street and Grove street properties, the decree of the Chancellor should be reversed. Theresa Johns will be entitled to redeem the Greene street property, upon paying the amount at which it was sold at sheriff's sale, with interest. Since the conveyance of the Grove street lot to Brainard, he has expended considerable sums in the erection of buildings, and in making permanent improvements upon it. The delay of the complainants in prosecuting their remedy may have induced him to believe that they did not intend to avail themselves of their equitable right to redeem, and under these circumstances it would be just to give him a fair and reasonable allowance for his improvements to the freehold. The case should be remitted to the court below, that an account may be taken under the direction of the Chancellor, and Theresa permitted to redeem upon equitable terms.

Costs in this court and the court below should be allowed to Johns and wife, but no costs to Mrs. Morehouse.

The whole court concurred.